IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALMATIA IMPORT GROUP, INC. and MAIA MAGEE, | : |
| | : |
| Plaintiffs, | : CIVIL ACTION NO. 16-2767 |
| | : |
| v. | : |
| | : |
| FOODMATCH, INC., LANCASTER FINE FOODS, INC., EARTH PRIDE ORGANICS, LLC, C.O. NOLT, INC., and MICHAEL S. THOMPSON, | : |
| | : |
| Defendants. | : |

## DALMATIA'S MOTION FOR JUDGMENT ON THE VERDICT

Pursuant to Federal Rule of Civil Procedure 58(d), Dalmatia Import Group, Inc. ("Dalmatia") and Maia Magee move for entry of judgment on the verdict of the jury. This motion is made without waiver of any post-judgment motion or request, including but not limited to Rule 50(b) motions for judgment as a matter of law, Rule 59 motions for a new trial, Rule 54(d)(2) motions for attorneys' fees, motions for permanent injunction, and Local Rule 54.1(c) requests for taxation of costs, each of which are anticipated. The requested judgment should be non-final, subject to post-judgment motions and requests. The requested judgment should be non-appealable.

A proposed judgment accompanies this motion. The judgment should be entered as follows:

### I. MISAPPROPRIATION OF TRADE SECRET CLAIMS

Pursuant to the jury's verdict, judgment should be entered in favor of Dalmatia Import Group, Inc. and against FoodMatch, Inc. ("FoodMatch"), Lancaster Fine Foods, Inc.

1

("Lancaster"), and Earth Pride Organics, LLC ("Earth Pride"), on Dalmatia's claims under the federal Defend Trade Secrets Act of 2016 and the Pennsylvania Uniform Trade Secrets Act. Dalmatia should recover $500,000 as to those claims.

## II. CLAIM FOR BREACH OF BEANIES NON-DISCLOSURE AGREEMENT

Pursuant to the jury's verdict, judgment should be entered in favor of Dalmatia and against Lancaster and Earth Pride on Dalmatia's claim that Lancaster and Earth Pride breached the Beanies non-disclosure agreement. Dalmatia should recover $500,000 from Lancaster and Earth Pride as to that claim.

## III. LANHAM ACT CLAIMS

### A. Liability

Pursuant to the jury's verdict, judgment should be entered in favor of Dalmatia and against FoodMatch, Lancaster, Earth Pride, and C.O. Nolt, Inc. ("C.O. Nolt") on Dalmatia's claims for trademark infringement under the federal Lanham Act.

Likewise, pursuant to the jury's verdict, judgment should be entered in favor of Dalmatia and against FoodMatch, Lancaster, Earth Pride, and C.O. Nolt, Inc. on Dalmatia's claims for counterfeiting under the federal Lanham Act.

### B. Damages

As to the Lanham Act claims, the jury determined Defendants' profits as follows:

- $575,000 as to FoodMatch
- $300,000 as to Lancaster and Earth Pride
- $425,000 as to C.O. Nolt

The jury also found Dalmatia's damages from the Lanham Act violations to be $200,000. In entering judgment, the Court should award (1) Defendants' profits, trebled, as explained below,

(2) Dalmatia's damages, and (3) costs of the action. 15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.").

The Court must treble the Defendants' profits under 15 U.S.C. § 1117(b) because the jury found Defendants liable for intentional counterfeiting and the profits amounts are greater than the actual damages awarded. 15 U.S.C. § 1117(b) ("In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title . . . the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of . . . intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . . .").

Trebling is **mandatory**. *See, e.g.*, *Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 718 (4th Cir. 2015), *as amended* (Apr. 15, 2015) ("Section 1117(b) . . . **mandates** the award of treble profits or treble damages for a defendant's 'use of [a] counterfeit mark' if the infringement consists of (1) 'intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark,' or (2) 'providing goods or services [using such mark], with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.'" (emphasis added)); *Louis Vuitton Malatier S.A. v. Ly USA, Inc.*, 676 F.3d 83, 109 n.25 (2d Cir. 2012) (explaining, in the context of an attorneys' fee award, that Section 1117(b) is "**mandatory**"); *Covertech Fabricating, Inc. v. TVM Bldg. Prods.*, 124 F.

3

Supp. 3d 489, 540 (W.D. Pa. 2015) ("Pursuant to 15 U.S.C. § 1117(b), since this case involves TVM's intentional use of a counterfeit mark, knowing such mark to be a counterfeit mark, the Court is to enter judgment for three times the profits from such use, unless there are extenuating circumstances."); *Act II Jewelry v. Mu Ying Zhu*, No. 09-407, 2010 U.S. Dist. LEXIS 70185, at *19-*21 (E.D. Va. 2010) ("Thus, while courts have some discretion to increase or decrease damages under Section 1117(a), the trebling of damages and award of attorney's fees is ***mandatory*** under Section 1117(b), absent extenuating circumstances." (emphasis added)); *Microsoft Corp. v. CMOS Techs., Inc.*, 872 F. Supp. 1329, 1339 (D.N.J. 1994) ("the Lanham Act was amended in 1984 to make the award of treble damages ***mandatory*** in cases where the Court finds the defendant has committed intentional distribution, offer for sale or sale of counterfeit goods." (emphasis added)). "Section 35 of the Lanham Act, 15 U.S.C. § 1117(b) provides for *automatic* trebling of damages in the case of counterfeiting." *Jama Corp. v. Gupta*, No. 3:99-cv-1624, 2008 U.S. Dist. LEXIS 102, at *45 (M.D. Pa. Jan. 2, 2008) (emphasis added).

The statutory language is clear: The court "***shall***" treble the Defendants' profits or the plaintiff's actual damages (whichever is greater) absent "extenuating circumstances." 15 U.S.C. 1117(b). "Under the amended statute, absent 'extenuating circumstances,' federal courts are *expected, and not merely authorized* to 'enter judgment for three times such profits or damages, whichever is greater, together with reasonable attorney's fee.'" *Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F. Supp. 1143, 1147 (S.D.N.Y. 1986) (emphasis added). The Seventh Circuit explains: "Section 1117(b) is a severe statute. The trebling of the plaintiff's damages or the defendant's profits—whichever is greater—is mandatory (as is the award of the plaintiff's attorney's fees), subject only to the statute's exception for 'extenuating

4

circumstances,' which as we shall see is extremely narrow." *Louis Vuitton, S.A. v. Lee*, 875 F.2d 584, 588 (7th Cir. 1989).

No extenuating circumstance that would justify not imposing treble damages exists in this case. "Where the defendant is an 'unsophisticated individual, operating on a small scale, for whom the imposition of treble damages would mean that he or she would be unable to support his or her family' treble damages may be inappropriate." *Microsoft Corp. v. CMOS Techs.*, 872 F. Supp. 1329, 1339 (D.N.J. 1994) (quoting Joint Explanatory Statement, 130 CONG. REC. H. 12,076 at 12,083 (Oct. 10, 1984)). "However, Congress has indicated that 'it will be a rare case in which a defendant who has trafficked in goods or services using a mark that he or she knows to be counterfeit can show that he or she should not be assessed treble damages.'" *Id.* "The Court has no reason to believe that this is such a rare case." *Days Inn Worldwide, Inc. v. Mayu & Roshan, LLC*, No. 06-1581, 2007 U.S. Dist. LEXIS 41997, at *25 (D.N.J. June 6, 2007); *see also Ramada Worldwide, Inc. v. Jay-Dharma*, No. 05-3311, 2006 U.S. Dist. LEXIS 77969, at *25-*26 (D.N.J. Oct. 23, 2006).

Moreover, "[e]xtenuating circumstances is an affirmative defense that must be pled." *Microsoft Corp. v. Gonzales*, No. 06-4331, 2007 U.S. Dist. LEXIS 51048, at *17 (D.N.J. July 13, 2007); *Chanel*, 2007 U.S. Dist. LEXIS 6576, at *22 (same); *Minitube of Am., Inc. v. Reprod. Provisions, LLC*, No. 13-685, 2014 U.S. Dist. LEXIS 60596, at *68 n.23 (E.D. Wis. May 1, 2014) (same). Here, not only did Defendants never *plead* "extenuating circumstances," they denied trademark infringement altogether. They did so without ever possessing a good faith basis to do so—right up until closing arguments *when FoodMatch **admitted** what Defendants forced Dalmatia to litigate to verdict*: "Dalmatia has a legitimate claim for the extra money that was received by Lancaster or C.O. Nolt, that that amount should have gone to Dalmatia. I think

5

it is $188,000." *Tr.* 2/23/17 at 133. FoodMatch told the jury that "[n]o one is suggesting that Dalmatia ought not to be paid for its profit on that, $188,000" *after spending a full year of litigation and four weeks of trial arguing precisely that*. Never *once* did Defendants plead <u>or even argue</u> "extenuating circumstances." Consequently they waived the defense, as the court held in *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex*:

> The defense of extenuating circumstances is an affirmative defense. Defendants did not plead the affirmative defense of extenuating circumstances, or include any reference to such defense in their pretrial filings. The first time the matter was brought to the Court's attention was in defendants' closing argument. Although, as defendants note, evidence relevant to such issue was admitted without objection, the record contains no indication that Koon Chun was aware the defense of extenuating circumstances was being raised, let alone that Koon Chun was provided the opportunity to take discovery with respect to such defense. Under such circumstances, the Court deems the defense waived.

No. 04-4146, 2007 U.S. Dist. LEXIS 7880, at *43-*44 (N.D. Cal. Feb. 2, 2007).

Defendants apparently believe that Section 1117(b) does not require trebling because the jury did not find Defendants' counterfeiting was willful. FoodMatch's counsel Mr. Smith told *The National Law Journal*: "We believe that, since the jury found no willfulness, there is no chance that the court will award treble damages."[1] Defendants' belief is mistaken. Section 1117(b) does not require a finding of willfulness. Indeed, Section 1117(b) says *nothing* about willfulness. The jury was asked about willfulness because that finding governed the range of statutory damages it could award under Section 1117(c), which *does* discuss "willful" use of a counterfeit mark. And the Third Circuit has held that Congress's addition of the word "willful" in Section 1117(c) bars courts from interpreting another provision of Section 1117 to require

---

[1] Scott Graham, *Jam Maker Jars $2.5M Verdict in Trade Secrets Case*," NAT'L L.J. (Feb. 27, 2017).

6

willfulness. *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 174-75 (3d Cir. 2005). Quite simply, there is no statutory basis for Defendants' position—just as there was *never* any legitimate defense to Dalmatia's Lanham Act claims, throughout the entire case.

The Court properly instructed the jury that, in order to find counterfeiting, it must find that the Defendants used Dalmatia's trademark *knowing* it was counterfeit or that Defendants were *willfully blind* to such use. *Tr*. 2/23/17 at 243-44. The jury so found. As a matter of law, that finding triggers the mandatory provisions of Section 1117(b):

> A further point is that although section 1117(b) requires a showing that the defendant's violation involved "knowing such mark . . . is counterfeit," it is enough for these purposes that the defendant failed to inquire further because he was afraid of what the inquiry would yield. Willful blindness is knowledge enough. *See* Joint Statement on Trademark Counterfeiting Legislation, *supra*, 130 Cong. Rec. at H12076-77 ("Of course, if the prosecution proves that the defendant was 'willfully blind' to the counterfeit nature of the mark, it will have met its burden of showing 'knowledge.'").

*Lee*, 875 F.2d at 589; s*ee also Lorillard Tobacco Co. v. A&E Oil, Inc.*, 503 F.3d 588, 591-92 (7th Cir. 2007) ("To prove knowledge of the counterfeiting, Lorillard was not required to prove the defendants' actual knowledge; knowledge includes a willful blindness or a failure to investigate because one 'was afraid of what the inquiry would yield.' If willful blindness occurs, an award [under Section 1117(b)] is required by the statutory language absent extenuating circumstances."); *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1151 (7th Cir. 1992) ("Willful blindness is sufficient to trigger the mandatory provisions of subsection b."); *Chanel, Inc. v. Italian Activeware of Fla., Inc.*, 931 F.2d 1472, 1475 (11th Cir. 1991) ("[W]illful blindness could provide the requisite intent or bad faith" to trigger trebling under Section 1117(b)); *Act II Jewelry*, 2010 U.S. Dist. LEXIS 70185, at *22-*23 (finding "willful blindness" sufficient to trigger mandatory trebling under Section 1117(b)).

7

Courts reject Defendants' position that "willfulness" is required under Section 1117(b). *See Koon Chun King Kee Soy & Sauce Factory, Inc. v. Star Mark Mgmt., Inc.*, 409 Fed. App'x 389, 390 (2d Cir. 2010) ("Defendants first contend the district court erred because it awarded treble damages and attorneys' fees based on the lower standard of willful infringement applied in copyright cases, rather than finding *willful* trademark infringement. The plain language of Section 1117(b) *mandates* the imposition of treble damages and attorneys' fees for the "*intentional*[]" and "*knowing*" use of a counterfeit mark—and the district court properly did so.") (emphasis added). Intentionality, not willfulness, triggers mandatory trebling. *Chanel,* 931 F.2d at 1475 ("If the infringement is intentional, however, § 1117(b) governs: unless the court finds extenuating circumstances, treble damages and attorneys' fees are mandated.")

Ultimately, trebling is not within the Court's discretion in this case. The Court *must* treble Defendants' profits (which are greater than Dalmatia's actual damages, as found by the jury) under Section 1117(b). *See Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, No. 00-1934, 2003 U.S. Dist. LEXIS 8788, at *67-*70 (N.D. Ga. May 9, 2003) (discussing the mandatory nature of Section 1117(b)).

Upon trebling, Dalmatia should recover $1,725,000 from FoodMatch ($575,000 trebled), $900,000 from Lancaster and Earth Pride ($300,000 trebled), and $1,275,000 from C.O. Nolt ($425,000 trebled). Additionally, pursuant to the jury's determination of Dalmatia's actual damages and 15 U.S.C. § 1117(a), Dalmatia should recover $200,000 and costs of the action jointly and severally from FoodMatch, Lancaster, Earth Pride, and C.O. Nolt.

### C. Pre-Judgment Interest

Section 1117(b) expressly permits the Court to award prejudgment interest on top of the total amount awarded. The statute provides: "In such a case, the court may award prejudgment

interest on such amount at an annual interest rate established under section 6621(a)(2) of title 26, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate."

The following factors are relevant in determining whether an award of prejudgment interest is appropriate:

(1) whether the claimant has been less than diligent in prosecuting the action;

(2) whether the defendant has been unjustly enriched;

(3) whether an award would be compensatory; and

(4) whether countervailing equitable considerations militate against a surcharge.

*Feather v. United Mine Workers of Am.*, 711 F.2d 530, 540 (3d Cir. 1983). All of these factors weigh in favor of awarding the maximum allowable amount of prejudgment interest to Dalmatia. First, Dalmatia was diligent in prosecuting the action. It filed its Lanham Act claims only about one month after discovering the counterfeit product on the market. Second, the Defendants have been unjustly enriched as shown in the jury's finding that they profited, collectively $1.3 million, from their intentional and knowing sale of counterfeit Dalmatia fig spread. Third, an award of prejudgment interest would be compensatory because it would compensate Dalmatia for the time value of the amount to which it was entitled upon filing its Lanham Act claims. *Vanalt Elec. Const., Inc. v. Selco Mfg. Corp.*, No. CIV.A. 03-CV-6741, 2008 WL 63245, at *4 (E.D. Pa. Jan. 3, 2008) ("Simply put, prejudgment interest is compensation for the 'time value' of money damages awarded at trial . . . and is not duplicative of the principal damages." (citing *Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972, 981 (3d Cir.1984)). Fourth, there are no countervailing equitable considerations that militate against an award of prejudgment

interest. Defendants were found liable for "a uniquely pernicious form of trademark infringement." S. REP. 98-526, 2, 1984 U.S.C.C.A.N. 3627, 3628. An award of prejudgment interest is consistent with the Section 1117(b)'s purpose of encouraging private litigants to enforce the Lanham Act against counterfeiters by helping to ensure that they are made whole for losses that are often difficult to prove. S. REP. 98-526, 6, 1984 U.S.C.C.A.N. 3627, 3632.

FoodMatch, Lancaster, and Earth Pride were served with the First Amended Complaint, which included the counterfeiting claim on which Dalmatia prevailed, shortly before April 1, 2016. C.O. Nolt agreed to accept service of the Third Amended Complaint, which included the counterfeiting claim against it, on December 23, 2016. During the entire time period, the applicable rate, which is federal "Underpayment rate" set by the Internal Revenue Code has been 4%.[2]

For purposes of its proposed judgment, Dalmatia assumes that the Court will enter judgment on April 1, 2017. In that scenario, Dalmatia would recover approximately $67,000 from to FoodMatch, $36,000 from Lancaster and Earth Pride, and $12,750 from C.O. Nolt. The numbers will change slightly if the Court enters judgment on a different date.

**D.  Statutory Damages**

The jury awarded $1,000,000 in statutory damages. That award in inconsistent with the jury's answer to the willfulness question on counterfeiting. This inconsistency may be the subject of post-trial motions, but it need not affect the non-final judgment by the Court on the jury's verdict. Pursuant to 15 U.S.C. § 1117(c), " may elect, at any time before final judgment is rendered by the trial court, to recover" statutory damages. Dalmatia has not so elected yet and

---

[2] https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/correction-programs/vfcp/table-of-underpayment-rates.

does not do so at this time, reserving its right to do so prior to final judgment. The non-final judgment sought by this motion need not address statutory damages.

## IV. CONVERSION

Pursuant to the jury's verdict, judgment should be entered in favor of Dalmatia and against Lancaster and Earth Pride on Dalmatia's claim for conversion. Dalmatia should recover $67,000 from Lancaster and Earth Pride as to that claim.

## V. POST-JUDGMENT INTEREST

Post-judgment interest is awarded on any money judgment recovered in a civil case. *See* 28 U.S.C. § 1961. Post-judgment interest is measured "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment," "computed daily to the date of payment" and "compounded annually." *Id.* As of this writing, the rate would be approximately 1%. The Court should enter the amount at the time of the judgment (it is expected to rise), to be updated as the judgment becomes final.

## VI. "TAKE NOTHING" CLAIMS

Subject to post-judgment motions that may be filed under Rules 50(b) and 59, and pursuant to the jury's verdict:

Judgment should be entered in favor of FoodMatch on both of Dalmatia's claims against it for breach of contract.

Judgment should be entered in favor of Lancaster and Earth Pride on Dalmatia's claim for breach of the Supply Agreement.

Judgment should be entered in favor of FoodMatch on Dalmatia's claim for tortious interference with contract.

Judgment should be entered in favor of FoodMatch, Lancaster, Earth Pride, and C.O. Nolt on Dalmatia's claim for unfair competition.

Judgment should be entered in favor of FoodMatch, Lancaster, Earth Pride, and C.O. Nolt on Dalmatia's claim for civil conspiracy.

Judgment should be entered in favor of Michael S. Thompson and against Dalmatia on all claims asserted against Mr. Thompson.

Judgment should be entered in favor of Dalmatia and against FoodMatch on FoodMatch's counterclaim for breach of contract.

Judgment should be entered in favor of Dalmatia and against Lancaster on Lancaster's counterclaim for unjust enrichment.

Judgment should be entered in favor of Lancaster and against Maia Magee on Lancaster's counterclaim for civil trespass, but Lancaster should take nothing on this claim.

Judgment should be entered in favor of Maia Magee and against Lancaster on its counterclaim for civil conspiracy.

*     *     *

For the reasons stated above, Dalmatia and Maia Magee respectfully request that the Court enter a non-final non-appealable judgment on the verdict as set forth in the proposed judgment submitted herewith.

Respectfully submitted,

/s/ *Lauren E. Handel*
Samuel E. Cohen (Pa. ID# 204617)
Constance K. Nelson (Pa. ID# 92807)
GROSS MCGINLEY, LLP
33 South Seventh Street, PO Box 4060
Allentown, Pennsylvania 18105
(610) 820-5450

Lauren E. Handel
HANDEL FOOD LAW LLC
75 Washington Valley Road #416
Bedminster, New Jersey 07921
(908) 206-4103

Michael S. Nadel
Natalie A. Bennett
Jennifer Butler Routh
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

*Attorneys for Plaintiff*
*Dalmatia Import Group, Inc.*
*and Maia Magee*

# CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2017, a true and correct copy of the foregoing was filed electronically using the CM/ECF system. As such, this document was served on all counsel who have consented to electronic service, including as follows:

*Counsel for Defendant FoodMatch, Inc.:*

Richard Feldman, Esq.
Michael Smith, Esq.
ROSENBERG FELDMAN SMITH, LLP
551 Fifth Avenue, Floor 24
New York, New York 10176

*Counsel for Defendant Lancaster Fine Foods, Inc., Earth Pride Organics, and Michael S. Thompson:*

George J. Krueger, Esq.
Alexandra Scanlon Kitei, Esq.
Brian Berkley, Esq.
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103

            /s/ *Lauren E. Handel*
            Lauren E. Handel